## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| GREGORY JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WHOLE FOODS MARKET GROUP, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Gregory Johnson complains against Defendant Whole Foods Market Group, Inc., as follows:

### PARTIES

2. Plaintiff Gregory Johnson is a resident of Gray, Maine.

3. Defendant Whole Foods Market Group, Inc. ("Defendant" or "Whole Foods") is Delaware corporation, with headquarters in Austin, Texas, and is licensed to do business in the State of Maine.

### JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332.

9. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because the events at issue occurred in Cumberland County.

10. Plaintiff has exhausted all necessary administrative remedies and has otherwise met all conditions before commencing suit on this matter. On January 28, 2021, the Maine Human Rights Commission issued Plaintiff a "Notice of Right to Sue" letter.

## JURY TRIAL DEMAND

11. Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

## FACTUAL ALLEGATIONS

12. Plaintiff began working as a cashier at Whole Foods in Portland, Maine in April 2019. He met or exceeded performance expectations.

13. Plaintiff was subjected to physical and emotional abuse as an adolescent, and was severely traumatized. As a result, Plaintiff has been diagnosed with multiple emotional and psychological disabilities, including PTSD, depression, anxiety, and obsessive-compulsive disorder.

14. Plaintiff was capable of performing the essential functions of his job at While Foods with or without reasonable accommodations.

15. During his employment with Whole Foods, Plaintiff suffered from impairments that substantially limited one or more of his major life activities, had a record of such an impairment, and/or was regarded by Defendant as having such an impairment.

16. Upon hire, Plaintiff disclosed his disabilities to Whole Foods, and informed them that the prior gap in his employment was due to his disabilities.

17. Plaintiff was initially hired as a cashier, but was promoted to "supervisor" within two months of his hire.

18. In August 2019, Plaintiff experienced severe flare-ups of symptoms related to his conditions, including but not limited to experiencing sudden and severe panic attacks.

19. Plaintiff requested a medical leave of absence, which Whole Foods approved from August 29, 2019 through September 18, 2019.

20. When Plaintiff returned from his leave, he requested a reasonable accommodation in the form of intermittent leave. The intermittent leave accommodation was intended to be used in the event he experienced flare-ups such as severe panic-attacks.

21. Whole Foods approved Plaintiff's request for the intermittent leave accommodation.

22. After requesting reasonable accommodations, several of Plaintiff's managers in the Portland store mocked and belittled him. The Team Leader, Sean Danis, questioned the existence of Plaintiff's disabilities and the validity of his need for accommodations.

23. Approximately one week after he returned from leave, Plaintiff complained to Whole Foods' Team Member Services ("TMS") representative, Christina Oertel, about the harassment and hostility to which he had been subjected by his managers.

24. Ms. Oertel appeared to take the side of Plaintiff's managers. She told Plaintiff: "Well, your shoes are on the right feet, and you're standing upright, so you don't appear to have a disability."

25. Plaintiff was shocked by Ms. Oertel's statement.

26. On October 28, 2019, Plaintiff was directed to train on the store's "cash-up" procedure. This procedure was performed in a small, windowless room, and could take up to three hours.

27. Plaintiff informed his trainer several times during the training that he was having trouble being in a small, confined, area for so long, and that the confinement was triggering a panic attack.

28. The trainer did not take Plaintiff's complaint seriously, and made Plaintiff finish the training, which lasted approximately five hours.

29. After the training, Plaintiff complained to Mr. Danis, that being in a small, confined, space exacerbated his medical conditions.

30. Plaintiff stated that he wanted to discuss an accommodation to address how the "cash-up" procedure exacerbated his conditions.

31. Mr. Danis became hostile toward Plaintiff, and told Plaintiff it was a "supervisor's duty" to perform the "cash-up" procedure. Mr. Danis told Plaintiff that he would have to perform the task regardless of his disabilities and/or need for accommodations.

32. Plaintiff knew that Mr. Danis's assertion was false because, at that point, he had been a supervisor for nearly four months, and "cash-up"

had never been identified as one of his necessary duties.  Further, Plaintiff was aware that many non-supervisory employees regularly performed "cash-up," including cashiers, and employees from various other departments.

33.    The spike in Plaintiff's symptoms after enduring the training, compounded with Mr. Danis telling him that he would have to continue performing the "cash-up" procedure in a small room for hours-on-end, caused Plaintiff to have a severe panic attack.

34.    Plaintiff informed Mr. Danis that he was having a panic attack, and that he had to leave, which was precisely what Plaintiff's intermittent leave accommodation was designed to address.  Mr. Danis did not respond. He watched watch Plaintiff punch-out and leave the store.

35.    When Plaintiff returned to Whole Foods for his next shift, on October 30, 2019, two Assistant Store Team Leaders ("ASTL") approached him and directed him to a meeting.  TMS representative, Ms. Oertel, was present in the meeting on speaker phone. The two ASTLs began questioning Plaintiff about his panic attack and his early departure on October 28th. They also raised, for the first time, an incident on October 21st, when Plaintiff accidently left his keys at a cash register.

36.    The ASTLs informed Plaintiff that he was being placed on administrative leave pending an "investigation."

37.    Plaintiff was puzzled by the ASTLs' assertion that an "investigation" was needed because: (a) he was approved to use his

5

intermittent leave accommodation for precisely the type of situation that occurred on October 28th, and (b) he acknowledged that he accidently left his keys at a register, more than a week earlier, and advised them that Mr. Danis returned his key to him and simply said "be careful of that." In short, he did not understand what there was to "investigate."

38. While on leave, Plaintiff contacted TMS representative, Ms. Oertel, multiple times, to try to understand why he had been placed on leave pending an "investigation." Again, he informed her about the hostility and harassment he had received from members of his store leadership, including questions regarding the validity of his disability and need for accommodations.

39. On November 14, 2019, Plaintiff attempted, unsuccessfully, to contact TMS supervisor, Ms. Tenczar, to request an update on the "investigation" that Whole Foods was purportedly conducting.

40. Hours later, Store Manager Scott Johnson called Plaintiff to state that his employment with Whole Foods was terminated.

41. Mr. Johnson stated that Plaintiff's termination was based on his "improper leave" on October 28, 2019, and his misplacement of his keys on October 21, 2019.

COUNT I
(Disability Discrimination – Disparate Treatment – MHRA and ADA)

42. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-41 of this Complaint.

43. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his job with or without reasonable accommodations.

44. As set forth above, Defendant discriminated against Plaintiff with respect to the terms, conditions or privileges of his employment based on his disability, or, alternatively, on Defendant's perception that Plaintiff was disabled; treated Plaintiff differently than other employees who were not disabled; subjected Plaintiff to intolerable working conditions; denied without justification Plaintiff's requests for reasonable accommodations; and terminated Plaintiff's employment, at least in part, because of his need for a reasonable accommodation.

45. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

    A. Reinstatement, or front pay in lieu of reinstatement;
    B. Back pay from October 30, 2019, with prejudgment interest;
    C. Compensatory damages;
    D. Punitive damages;
    E. An award of reasonable attorney's fees and all costs; and
    F. All other damages to which Plaintiff may be entitled.

**COUNT II**
**(Hostile Work Environment Based on Disability – MHRA and ADA)**

46. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-45 of this Complaint.

47. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his job with or without reasonable accommodations.

48. As set forth above, Defendant created an unreasonably hostile work environment based on or in response to Plaintiff's status as a person with a disability, or, alternatively, on Defendant's perception that Plaintiff was disabled. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive and hostile work environment. Defendant's conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiff in fact did perceive it to be so.

49. Defendant is liable for the acts and omissions of Plaintiff's supervisors, managers, and management personnel.

50. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

   A. Reinstatement, or front pay in lieu of reinstatement;
   B. Back pay from October 30, 2019, with prejudgment interest;
   C. Compensatory damages;
   D. Punitive damages;
   E. An award of reasonable attorney's fees and all costs; and
   F. All other damages to which Plaintiff may be entitled.

## COUNT III
### (Retaliation, Interference, Coercion, or Intimidation – MHRA and ADA)

51. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-50 of this Complaint.

52. Plaintiff engaged in activity protected under the anti-discrimination provisions of the MHRA and ADA; to wit, he opposed and complained to management about his need for reasonable accommodations and the denial of his requests for accommodations.

53. Defendant subjected Plaintiff to adverse employment action, to wit: Defendant retaliated against Plaintiff with respect to the terms, conditions or privileges of his employment; denied without justification his requests for accommodations; unlawfully interfered, intimidated, or threatened him while he exercised rights to be free from discrimination or harassment; created hostile working conditions; made false statements to justify its actions; and wrongfully terminated his employment, all because Plaintiff opposed the unlawful acts or practices of his employer, and all in violation of the MHRA and ADA.

54. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

    A. Reinstatement, or front pay in lieu of reinstatement;
    B. Back pay from October 30, 2019, with prejudgment interest;
    C. Compensatory damages;

    D. Punitive damages;
    E. An award of reasonable attorney's fees and all costs; and
    F. All other damages to which Plaintiff may be entitled.

## COUNT IV
### (Whistleblower Retaliation – MWPA and MHRA)

55. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-54 of this Complaint.

56. Plaintiff engaged in activity protected under the MWPA; to wit, acting in good faith, he reported to his employer what he had reasonable cause to believe was a violation of a State or Federal law.

57. Defendant subjected Plaintiff to adverse employment action, to wit: Defendant retaliated against Plaintiff with respect to the terms or conditions of his employment; denied his request for reasonable accommodations; punished him for using an approved reasonable accommodation; created hostile working conditions; made false statements; and wrongfully terminated his employment, all because Plaintiff made such reports and complaints, all in violation of the MWPA and MHRA.

58. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MWPA and MHRA:

    A. Reinstatement, or front pay in lieu of reinstatement;
    B. Back pay from October 30, 2019, with prejudgment interest;
    C. Compensatory damages;
    D. Punitive damages;

  E. An award of reasonable attorney's fees and all costs; and
  F. All other damages to which plaintiff may be entitled.


Dated: March 31, 2021      Respectfully Submitted,

              */s/ James A. Clifford*
              James A. Clifford
              */s/ Andrew P. Cotter*
              Andrew P. Cotter
              CLIFFORD & CLIFFORD, LLC
              62 Portland Rd., Suite 37
              Kennebunk, ME 04101
              (207) 985-3200